## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **COMPANION PROPERTY AND** | * |
| **CASUALTY INSURANCE COMPANY** | |
| 51 Clemson Road | * |
| Columbia, South Carolina 29229 | |
| | * |
| Plaintiff | |
| | * |
| v. | Civil Action No: 13-2235 |
| | * |
| **NIYYAH ELECTRICAL** | |
| **CONTRACTORS, LLC** | * |
| 568 Fox Hall place S.E. | |
| Washington DC 20032 | * |
| | |
| <u>SERVE ON:</u> | * |
| John T. Johnson, Resident Agent | |
| 638 Longfellow Street, N.W. | * |
| Washington, D.C. 20017 | |
| | * |
| **BARRETT T. JOHNSON** | |
| 568 Fox Hall place S.E. | * |
| Washington DC 20032 | |
| | * |
| **KHAFI N. KNOX MCDOWELL** | |
| 3300 East West Highway | * |
| Apartment 457 | |
| Hyattsville, Maryland 20782 | * |
| | |
| | * |
| Defendants | |
| | * |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

## <u>COMPLAINT</u>

Companion Property and Casualty Insurance Company ("Companion"), by its undersigned counsel, hereby files its Complaint against Niyyah Electrical Contractors, LLC ("Niyyah"), Barrett T. Johnson and Khafi Knox McDowell and for grounds states as follows:

## THE PARTIES

1.      Companion is a corporation organized and existing under the laws of the State of South Carolina, with its principal place of business located in South Carolina.  Companion is a surety company authorized to issue surety bonds in various jurisdictions including the District of Columbia.

2.      Niyyah is a corporation organized and existing under the laws of the District of Columbia, with its principal place of business located in the District of Columbia.

3.      Barrett T. Johnson ("Johnson"), upon information and belief, is an individual resident of the District of Columbia and Johnson is the managing member of Niyyah.

4.      Khafi Knox McDowell ("McDowell"), upon information and belief, is an individual resident of the State of Maryland and an officer, director and/or owner of Niyyah.

## JURISDICTION AND VENUE

5.      Subject matter jurisdiction exists in this Court pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship among the parties and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

6.      Personal jurisdiction exists in this Court as to the Defendants because they have substantial, persistent, on-going contacts with the State of Maryland such that they have availed themselves of the privileges and protections of this jurisdiction.  Personal jurisdiction exists in this Court as to Niyyah, because Niyyah regularly conducts business in Maryland, performs electrical contracting work in Maryland and buys goods, materials and services from Maryland companies, enters into contracts in Maryland, is a licensed minority contractor in Maryland and until 2013 was registered to do business in Maryland.  Personal jurisdiction exists in this Court as to Johnson because he is a licensed electrician in Maryland, formerly resided in Maryland, has sued and been

sued in Maryland on numerous occasions, conducts business with Maryland businesses and lenders and filed for personal bankruptcy in Maryland in the past.  Personal jurisdiction exists in this Court as to McDowell, because upon information and belief, she resides in Maryland.

7.      Venue is appropriate in this jurisdiction pursuant to 28 U.S.C. § 1391 (b)(3).

### INTRODUCTION

8.      This matter arises out of the issuance of surety bonds by Companion for the benefit of the Defendants.

9.      Suretyship is an ancient undertaking long recognized and long favored by the law. At its most basic level, a surety is defined as one who contracts to answer for the debt or default of another.  The "principal" is the party that is primarily obligated on the undertaking (in this case, Niyyah) and the "surety" is the party that is secondarily obligated (in this case, Companion). The "obligee" is the party to whom both the principal and the surety are obligated.  Suretyship is a form of performance guaranty under which the surety suffers a loss by its performance of the principal's obligations only if the principal fails to perform its obligations and is then unable to exonerate the surety and/or to reimburse the surety for the surety's losses.  The surety, in effect, provides its financial strength and credit on behalf of its principal and in favor of the obligee to secure the principal's performance.

10.     Statutes such as the federal "Miller Act" and the District's "Little Miller Act" require that surety performance and payment bonds be issued on virtually all public construction projects.  Thus, by providing the required bonds, sureties facilitate and stabilize the operation of the governmental construction industry and effectuate public policy by providing performance protection for the completion of the construction project for the governmental owner, the "obligee," and performance protection in the form of payment for the principal's laborers,

subcontractors and suppliers involved with the project, the "claimants." The surety's bonds are a tripartite agreement, creating obligations among the principal, the obligee and the surety, and to potential claimants as well.

11.     By agreeing to issue bonds with its principal, who also executes the bonds with the surety, the surety enables the principal to undertake governmental construction projects and to earn income and profits from such work. Thus, the principal and its owners benefit in a very tangible way from the financial security represented by the surety's bonds. However, surety bonds are not insurance. In exchange for issuing its bonds, the surety looks to the principal and other parties (in this case, Johnson and McDowell) for exoneration, indemnification and reimbursement for any surety losses arising under the bonds. Indeed, the bonds are issued based upon the underwriting assumption that the surety will be made whole and not incur any losses, and that the principal and other indemnitors will protect the surety by contract, under the law and equity from loss, either before or after the surety incurs the loss.

## FACTS COMMON TO ALL COUNTS

12.     Niyyah is an electrical subcontractor that installs electrical wiring, fixtures and equipment in residential and commercial structures. To perform certain government work or when required by general contractors, Niyyah was required to provide performance and payment surety bonds.

13.     Niyyah, Johnson and McDowell, through a surety agent, approached Companion seeking the issuance of surety bonds on various projects. In order to induce Companion to issue performance and payment bonds on behalf of Niyyah, and as an express condition of underwriting any such bonds, on or about July 20, 2011, Niyyah, Johnson and McDowell, for themselves individually and/or as officers of Niyyah, executed a General Agreement of Indemnity (the

"Indemnity Agreement") in favor of Companion.   A true and accurate copy of the Indemnity Agreement is attached hereto as **Exhibit 1**.   The signatures of Niyyah, Johnson and McDowell are genuine, authentic and duly notarized and authorized.   Niyyah, Johnson and McDowell will collectively hereafter be referred to as the "Indemnitors."   The Indemnitors expressly represent in the Indemnity Agreement that they each have a material and beneficial interest in obtaining bonds from Companion.   *Id.* at ¶ 8(C).

14.     The Indemnitors expressly promised and agreed in the Indemnity Agreement to indemnify and hold Companion harmless from all claims, damages, losses and expenses. Paragraph 2 of the Indemnity Agreement provides that the Indemnitors agree and bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, to:

> . . . indemnify and save harmless Surety from and against any and all liability, loss, costs, damages or expenses of whatever nature or kind and arising out of or in any way connected with such Bonds, including but not limited to fees of attorneys and other expenses, cost and fees of investigation, adjustment of claims, procuring or attempting to procure the discharge of such Bonds and attempting to recover losses or expenses from Indemnitors or third parties, whether the Surety shall have paid or incurred same, as aforesaid.

Exhibit 1 at ¶ 2.

15.     In addition to indemnification obligations, the Indemnitors further agreed that:

> The Surety shall have the right in its sole discretion to determine whether any suits or claims shall be paid, compromised, defended, prosecuted or appealed and to pay out such sums as it deems necessary to accomplish any of those purposes and its determination as to whether such suit or claim should be settled or defended shall be binding and conclusive on Indemnitors.   Surety shall have the right to incur such expenses in handling a claim as it shall deem necessary, including but not limited to the expense for investigative, accounting, engineering and legal services.   . . . In any claim or suit hereunder, an itemized statement of aforesaid loss and expense, sworn to by an officer or agent of Surety, or the vouchers or other evidence of disbursement by Surety, shall be prima facie evidence of the fact and extent of the liability hereunder of Indemnitors.

Exhibit 1 at ¶ 2 (A).

16.     Moreover, in the Indemnity Agreement the Indemnitors agreed that:

Surety shall have the right to reimbursement of its expenses, premiums and attorneys' fees hereunder, irrespective of whether any Bond loss payment has been made by Surety.  If the Surety has cause to enforce the terms of this Indemnity Agreement by filing suit against Indemnitors to recover sums due under this Agreement, it is understood by the Principal and Indemnitors that the Surety may recover its further expenses of such litigation, accrued interest and including 25% of such sums as attorneys' fees.  Any debt accrued by the Surety, on behalf of Principal and Indemnitors will accrue interest at 12% per annum.

Exhibit 1 at ¶ 2 (B).

17.     Indemnity agreements and provisions like those referenced above are common between indemnitors and sureties and serve to induce the issuance of bonds.  Accordingly, such Indemnity Agreements are uniformly upheld and enforced by the courts.

## THE APEX BONDS

18.     Apex Services, Inc. ("Apex"), a Maryland company, entered into a construction contract with the District of Columbia, Department of Real Estate Services, Contracting and Procurement Division, Solicitation No. DCAM-2011-B-0087 (the "Apex Contract"), for the Renovation and Expansion of the Emergency Operations Center at the Unified Communications Center ("Apex Project"), located in Washington, D.C.

19.     Thereafter, Apex entered into a subcontract agreement with Niyyah to furnish labor, materials and equipment for certain electrical work required on the Apex Project (the "Apex Subcontract").

20.     As a condition of the Apex Subcontract, Companion, as surety, at the request of the Indemnitors and in reliance upon the Indemnity Agreement, executed and delivered to Apex Performance and Payment Bonds on the Apex Project, Bond No.: 00010501 (collectively the "Apex Bonds", individually the "Apex Performance Bond" and "Apex Payment Bond"), with

Niyyah as Principal and Apex as Obligee.  Each Apex Bond was in the penal sum amount of $289,972.00.

### THE RBK BONDS

21.     RBK Construction, Inc. ("RBK") entered into a construction contract with the District of Columbia, Solicitation No. 041B-0811-001 (the "RBK Contract"), for the 7th and N Street NW Park Renovation ("RBK Project"), located in Washington, D.C.

22.     Thereafter, RBK entered into a subcontract agreement with Niyyah to furnish labor, materials and equipment for certain electrical work required on the RBK Project (the "RBK Subcontract").

23.     As a condition of the RBK Subcontract, Companion, as surety, at the request of the Indemnitors and in reliance upon the Indemnity Agreement, executed and delivered to RBK Performance and Payment Bonds on the RBK Project, Bond No.: 00010939 (collectively the "RBK Bonds", individually the "RBK Performance Bond" and "RBK Payment Bond"), with Niyyah as Principal and RBK as Obligee.  Each RBK Bond was in the penal sum amount of $111,281.00.

### THE APEX BOND LOSSES

24.     Subsequently, during performance of the Apex Subcontract, a dispute arose between Apex and Niyyah regarding performance of the work at the Apex Project.  Specifically, Apex alleged that Niyyah was delaying the Apex Project, that Niyyah failed to supply a sufficient amount of skilled workers, that Niyyah failed to properly and timely pay its laborers and employees in accordance with applicable District of Columbia labor law, and that Niyyah failed to pay for certain electrical equipment, materials and supplies.

25.     Indeed, the District of Columbia, through its Department of Employment Services, has issued two violation notices as a result of Niyyah's failure to properly classify and pay its

laborers on the Apex Project and failure to operate an approved apprentice program. The total amount of the violations is $201,767.09.

26. Further, when Niyyah submitted its bid for the work on the Apex Project, Niyyah failed to include in its estimated costs certain electrical equipment that had a total cost of $271,000. The equipment was clearly shown on the bid plans and documents. Despite being aware of its failure to include the equipment in its bid, Niyyah affirmed its bid price and signed the Apex Subcontract agreeing to perform the work and provide all materials and equipment at the original bid price and Niyyah did not exclude the equipment. Niyyah then refused to purchase the equipment, and, as a result, Apex was forced to purchase the equipment for the Apex Project at its own cost.

27. As a result of these substantial and material breaches of the Apex Subcontract by Niyyah, Apex terminated Niyyah effective March 29, 2012.

28. After termination of the Apex Subcontract, Apex undertook completion of Niyyah's work on the Apex Project and made payments to some of Niyyah's sub-subcontractors and suppliers for work performed and/or materials provided to Niyyah on the Apex Project prior to termination and paid the labor violations.

29. Apex made demand upon Companion under the Apex Performance Bond for reimbursement of its costs, losses and expenses incurred as a result of Niyyah's breach of the Apex Subcontract and completion of Niyyah's work on the Apex Project.

30. Apex and Companion reached a settlement of Apex's Performance Bond claim and Companion agreed to pay Apex $220,000.00 to resolve the claim. Companion paid the $220,000.00 to Apex and obtained a release of the Apex Performance Bond on the Apex Project.

31.     In addition, Apex made demand upon Companion under the Apex Payment Bond for reimbursement of its costs, losses and expenses incurred as a result of Niyyah's breach of the Apex Subcontract and completion of Niyyah's work on the Apex Project.  The basis of the Apex claim against the Apex Payment Bond are: (i) indemnity under the terms of the Apex Payment Bond; (ii) subrogation by operation of law and (iii) assignment of the Niyyah laborers and suppliers that Apex paid.

32.     On April 2, 2013, a supplier to Niyyah on the Apex Project, Graybar Electric Company ("Graybar"), filed suit in the Superior Court of the District of Columbia, Case No. 13-0002380 (the "Graybar Litigation") against Companion, Niyyah and others seeking to recover $159,983.68 for supplies and materials allegedly provided to Niyyah on the Apex Project.

33.     The amount of the Apex demand against the Apex Payment Bond and the claims of other Apex Payment Bond claimants such as Graybar, United Rentals and former employees of Niyyah, far exceeded the penal sum of the Apex Payment Bond.  Accordingly, Companion filed an Interpleader Action in the United States District Court for the District of Columbia, Case No. 1:13-CV-00436 RWR-AK ("Interpleader Action").  Companion has paid the full amount of the penal sum of the Payment Bond, $289,972.00, into the registry of the Court in the Interpleader Action.

34.     In addition to the settlement with Apex and payment of the penal sum of the Apex Payment Bond in the Interpleader Action, Companion has incurred tens of thousands of dollars in costs, expenses, attorney's fees and court costs in investigating the claims, defending against the claims, settling the Apex Performance Bond claims, filing the Interpleader Action, defending against the litigation filed by Graybar and seeking indemnity from the Indemnitors.

## THE RBK BOND LOSSES

35.     Niyyah failed to pay all of its suppliers and subcontractors for work and materials provided for the RBK Project and as a result claims were made against Companion under the RBK Payment Bond.

36.     Companion has received the following claims against the RBK Payment Bond:

| | | |
|---|---|---|
| a. | Graybar Electric Company | $7,358.86 |
| b. | Branch Group, Inc. (Rexel) | $84,001.90 |
| c. | Surface America, Inc. | $3,173.61 |
| d. | United Rentals (North America) | $4,604.43 |

37.     Companion has incurred costs, losses and expenses associated with these claims and will continue to incur costs, losses, expenses and attorneys' fees as it investigates and adjusts such claims in the future.

## COMPANION DEMANDS

38.     Companion has made repeated demands upon the Indemnitors for cooperation, collateral, reimbursement and indemnity, but the Indemnitors have failed and refused to provide cooperation, reimbursement or indemnity.

39.     On March 26, 2012, April 3, 2012, May 24, 2012, June 7, 2012 and September 17, 2012, Companion made repeated demands upon the Indemnitors in substantially the following terms:

A.      demand is hereby made upon [Niyyah] and the Indemnitors to indemnify, defend and hold Companion harmless from the potential loss, costs, damages and expenses. *See* ¶ 2 of the [Indemnity Agreement];

B.      demand is hereby made upon [Niyyah] and the Indemnitors to provide Companion with collateral in the amount of $523,564.90. *See* ¶ 2(D) of the [Indemnity Agreement];

C.      demand is hereby made upon [Niyyah] and the Indemnitors to procure the discharge of Companion from the Bonds. *See* ¶ 8 (B) of the [Indemnity Agreement]; and

D.      demand is hereby made upon [Niyyah] and the Indemnitors to provide full and complete access to all of [Niyyah's] and the Indemnitors' books, records and accounts. *See* ¶ 8(J) of the [Indemnity Agreement].

(clarification added).

40.      The Indemnitors failed to provide reimbursement and indemnity, failed to procure the release of the Apex Bonds, failed to provide collateral and failed to allow access to their books and records.   Such failures constitute a clear, substantial and material breach of the Indemnity Agreement.

41.      All conditions precedent to bringing this action have been satisfied by Companion and/or have been waived by the Indemnitors and Companion has complied with all terms and conditions of the Indemnity Agreement, Apex Bonds and RBK Bonds.

### COUNT I – INDEMNITY

42.      Companion incorporates by reference paragraphs 1 through 41 of this Complaint as if fully set forth herein.

43.      Pursuant to the terms of the Indemnity Agreement, the Indemnitors have an obligation to indemnify and hold Companion harmless from any and all loss, liability, damage or expense as a result of the issuance of bonds on behalf of Niyyah.  Exhibit 1 at ¶ 2.

44.      Companion has incurred in excess of $661,000.00 in losses, costs, expenses and attorneys' fees as a direct and proximate result of the claims made against the Apex Bonds and RBK Bonds, which have arisen because of the Indemnitors' breach and failure to perform the obligations under the Apex Subcontract, RBK Subcontract, the Indemnitors' breach and failure

to perform the obligations under the Apex Bonds and RBK Bonds and the Indemnitors' breach and failure to comply with the terms and conditions of the Indemnity Agreement.

45.    The Indemnitors have failed to perform the conditions of the Apex Bonds, the Apex Subcontracts, the RBK Bonds and RBK Subcontracts and the Indemnity Agreement and have failed to reimburse Companion for the costs, expenses, attorneys' fees and related fees incurred as a result of claims made under the Apex Bonds, RBK Bonds, Interpleader Action, Graybar Litigation and settlement with Apex on the Apex Performance Bond.

46.    The Indemnitors' failures, acts and omissions constitute a substantial, material and on-going breach of the Apex Bonds, Apex Subcontracts, RBK Bonds, RBK Subcontracts and Indemnity Agreement.  The Indemnitors' breaches are without excuse or justification and Companion is in no way responsible for the Indemnitors' breaches.  Moreover, Companion has fulfilled all of its obligations in a timely and reasonable manner pursuant to its role as surety in accordance with generally accepted industry standards.

47.    Companion has demanded that the Indemnitors indemnify and reimburse it for all payments, losses, costs, expenses and fees incurred with respect to the Apex Bonds and RBK Bonds.

48.    Despite Companion's demands, the Indemnitors have refused and failed to indemnify and reimburse Companion for its losses.

49.    As a result of the Indemnitors' actions, failures and refusals, as noted herein, the Indemnitors have breached the terms and conditions of the Apex Bonds, the RBK Bonds and the Indemnity Agreement, and Companion is entitled to immediate, full and complete indemnification and reimbursement from the Indemnitors, jointly and severally.  In addition,

Companion is also entitled to recover its costs, expenses and attorney's fees incurred in this action to enforce the Indemnity Agreement against the Indemnitors.

WHEREFORE, Companion Property and Casualty Insurance Company respectfully requests that this Honorable Court enter judgment in its favor against Niyyah Electrical Contractors, LLC, Barrett T. Johnson and Khafi Knox McDowell, jointly and severally, in an amount to be proven at trial in excess of $661,000.00, plus all costs, expenses and fees incurred in this matter pursuant to the Indemnity Agreement, pre-judgment interest, post-judgment interest, attorney's fees incurred in this action and any other amount this Court deems appropriate and in the interests of justice.

### Count II
### (Subrogation - Breach of Bonds/Subcontracts)

50.     Companion repeats each of the allegations in paragraphs 1 through 49 of the Complaint as though fully set forth herein.

51.     Niyyah substantially and materially breached the Apex Subcontract by delaying the Apex Project, failing to provide a sufficient number of properly skilled workers, failing to provide sufficient material and equipment, failing to provide and pay for electrical equipment required under the Apex Subcontract and failing to pay its subcontractors, suppliers and laborers in accordance with District of Columbia law.  As a result of the breaches, Apex incurred hundreds of thousands of dollars in damages to complete the Apex Project.  In addition, as a result of Niyyah's failure to pay its subcontractors, laborers and suppliers, Niyyah breached the Apex Subcontract and the contractual agreements with its subcontractors, suppliers and laborers. Apex and Niyyah's subcontractors, suppliers and laborers duly asserted claims against the Apex Bonds.  Niyyah failed and refused to satisfy the aforesaid claims against the Apex Bonds.  As a

result, Companion has incurred costs, losses, expenses and attorneys' fees to resolve the claims against the Apex Bonds.

52.     Niyyah substantially and materially breached the RBK Subcontract and its supplier and subcontractor agreements by failing to pay its subcontractors and suppliers for work and materials furnished for the RBK Project.  As a result of the breaches, claims have been asserted against the RBK Payment Bond by Niyyah's suppliers and subcontractors.  Niyyah has refused and failed to pay its subcontractors and suppliers and has refused and failed to satisfy its obligations under the RBK Payment Bond with respect to such claims.  As a direct and proximate result of Niyyah's breaches as set forth herein, Companion has incurred costs, losses, expenses and attorney's fees.

53.     The Apex Bonds and RBK Bonds create a surety relationship between Niyyah and Companion in which Companion had various rights, including the right of equitable subrogation. At all relevant times, Niyyah was jointly and severally liable on the Apex Bonds and RBK Bonds with Companion to the bond obligees and claimants and Niyyah was liable to Apex under the Apex Subcontract and RBK under the RBK Subcontract and its suppliers, subcontractors and laborers under its respective contracts and agreements with those claimants.  Because Niyyah breached the Apex Subcontract, Apex Bonds, RBK Subcontract, RBK Bonds and breached the agreements and contracts with its suppliers, subcontractors and laborers and by virtue of the payments made by Companion, Companion is equitably subrogated, by operation of law, to all of the rights, claims and causes of action of Apex, RBK and Niyyah suppliers, subcontractors and laborers and Companion, as subrogee, is entitled to recover all amounts as may be proven at trial against Niyyah.

54.     Pursuant to the terms of the Indemnity Agreement, the Indemnitors promised and agreed to be jointly and severally liable under the Indemnity Agreement.  Accordingly, the Indemnitors are all jointly and severally liable for the breaches set forth herein and are jointly and severally liable to Companion under Companion's subrogation rights.

WHEREFORE, Companion Property and Casualty Insurance Company respectfully requests that this Honorable Court enter judgment in its favor against Niyyah Electrical Contractors, LLC, Barrett T. Johnson and Khafi Knox McDowell, jointly and severally, in the amount of such sums as may be proven at trial, plus all costs, expenses and fees incurred in this matter pursuant to the Indemnity Agreement, pre-judgment interest, post-judgment interest, attorney's fees incurred in this action and any other amount this Court deems appropriate and in the interests of justice.

### Count III
### (Assignment - Breach of Bonds)

55.     Companion repeats each of the allegations in paragraphs 1 through 54 of the Complaint as though fully set forth herein.

56.     Niyyah breached the Apex Performance Bond by breaching the Apex Subcontract and failing and refusing to perform its obligations under the Apex Performance Bond.  As a result, Apex incurred hundreds of thousands of dollars in damages.  Apex asserted claims against the Apex Performance Bond.

57.     Niyyah failed and refused to satisfy Apex's claims against the Apex Performance Bond.  As a result, Companion paid $220,000.00 to resolve the claims of Apex against the Apex Performance Bond.  As part of the settlement with Apex, Apex assigned all of its rights, claims and causes of action against Niyyah to Companion.

58.     Because Niyyah breached the Apex Subcontract and failed to satisfy Apex's claims against the Apex Performance Bond, Niyyah was in breach of the Apex Performance Bond. Accordingly, by virtue of the payments made by Companion and the assignment from Apex, Companion is the assignee to all of Apex's rights against Niyyah and is entitled to recover all amounts that can be proven at trial.

59.     Pursuant to the terms of the Indemnity Agreement, the Indemnitors promised and agreed to be jointly and severally liable under the Indemnity Agreement. Accordingly, the Indemnitors are all jointly and severally liable for the breach of the Apex Performance Bonds.

WHEREFORE, Companion Property and Casualty Insurance Company respectfully requests that this Honorable Court enter judgment in its favor against Niyyah Electrical Contractors, LLC, Barrett T. Johnson and Khafi Knox McDowell, jointly and severally, in the amount of such sums as may be proven at trial, plus all costs, expenses and fees incurred in this matter pursuant to the Indemnity Agreement, pre-judgment interest, post-judgment interest, attorney's fees incurred in this action and any other amount this Court deems appropriate and in the interests of justice.

Michael A. Stover (Fed. Bar No. 10497)
Wright, Constable & Skeen L.L.P.
One Charles Center, 16th Floor
100 North Charles Street
Baltimore, Maryland 21201
Telephone:     (410) 659-1300
Facsimile:     (410) 659-1350
mstover@wcslaw.com

Attorneys for Plaintiff, Companion Property
and Casualty Insurance Company